No. 13-1241

# In the Supreme Court of the United States

───────────

KBR, INCORPORATED, ET AL., PETITIONERS

*v.*

ALAN METZGAR, ET AL.

───────────

*ON PETITION FOR A WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT*

───────────

**BRIEF FOR THE UNITED STATES AS AMICUS CURIAE**

───────────

DONALD B. VERRILLI, JR.
  *Solicitor General*
    *Counsel of Record*
EDWIN S. KNEEDLER
  *Deputy Solicitor General*
JOHN F. BASH
  *Assistant to the Solicitor
  General*
MICHAEL S. RAAB
H. THOMAS BYRON III
  *Attorneys*

  *Department of Justice
  Washington, D.C. 20530-0001
  SupremeCtBriefs@usdoj.gov
  (202) 514-2217*

**EXHIBIT 2**

## QUESTIONS PRESENTED

Respondents brought state-law claims against petitioners for injuries arising out of petitioners' allegedly negligent performance under contracts with the U.S. military in Iraq and Afghanistan.  The questions presented are:

1.  Whether the political-question doctrine bars respondents' claims.

2.  Whether respondents' claims are preempted because they arise out of the uniquely federal sphere of the military's combat operations.

3.  Whether respondents' claims are barred by the doctrine of derivative sovereign immunity.

(I)

**TABLE OF CONTENTS**

Page

Statement ............................................................................ 1

Discussion .......................................................................... 7

   A.  Although this case is justiciable at this stage of
the litigation, respondents' claims are preempted ....... 8

   B.  Given the interlocutory posture of this case,
review is not warranted at this time ............................ 19

Conclusion .......................................................................... 24

**TABLE OF AUTHORITIES**

Cases:

*Aktepe* v. *United States*, 105 F.3d 1400 (11th Cir.
1997), cert. denied, 522 U.S. 1045 (1998) ............................ 9

*Al Shimari* v. *CACI Int'l, Inc.*, 679 F.3d 205
(4th Cir. 2012) ................................................................. 6

*Arizona* v. *United States*, 132 S. Ct. 2492 (2012) ............... 16

*Baker* v. *Carr*, 369 U.S. 186 (1962) ...................................... 8, 9

*Banco Nacional de Cuba* v. *Sabbatino*,
376 U.S. 398 (1964) .......................................................... 12

*Boyle* v. *United Techs. Corp.*, 487 U.S. 500 (1988) ..... *passim*

*Buckman Co.* v. *Plaintiffs' Legal Comm.*,
531 U.S. 341 (2001) .......................................................... 16

*Carmichael* v. *Kellogg, Brown & Root Servs., Inc.*,
572 F.3d 1271 (11th Cir. 2009), cert. denied,
561 U.S. 1025 (2010) ................................................... 19, 20

*Clearfield Trust Co.* v. *United States*, 318 U.S. 363
(1943) ................................................................................ 12

*Corrie* v. *Caterpillar, Inc.*, 503 F.3d 974 (9th Cir.
2007) .................................................................................. 9

*Gilligan* v. *Morgan*, 413 U.S. 1 (1973) ................................ 9

*Harris* v. *Kellogg Brown & Root Servs., Inc.*,
724 F.3d 458 (3d Cir. 2013), petition for cert
pending, No. 13-817 (filed Jan. 8, 2014) ................... *passim*

(III)

IV

Cases—Continued:                                          Page

*Japan Whaling Ass'n* v. *American Cetacean Soc'y*,
478 U.S. 221 (1986) ................................................8

*Koohi* v. *United States*, 976 F.2d 1328 (9th Cir. 1992),
cert. denied, 508 U.S. 960 (1993).............................5, 14, 21

*Lane* v. *Halliburton*, 529 F.3d 548 (5th Cir. 2008)...........20

*Martin* v. *Halliburton*, 618 F.3d 476 (5th Cir. 2010).........22

*McMahon* v. *Presidential Airways, Inc.*, 502 F.3d
1331 (11th Cir. 2007).............................................20

*Saleh* v. *Titan Corp.*, 580 F.3d 1 (D.C. Cir. 2009),
cert. denied, 131 S. Ct. 3055 (2011) ....................5, 6, 14, 20

*Steel Co.* v. *Citizens for a Better Env't*, 523 U.S. 83
(1998) ...........................................................23

*Taylor* v. *Kellogg Brown & Root Servs., Inc.*,
658 F.3d 402 (4th Cir. 2011) .................................2, 3

*Tenet* v. *Doe*, 544 U.S. 1 (2005) ...........................23

*Texas Indus., Inc.* v. *Radcliff Materials, Inc.*,
451 U.S. 630 (1981) .............................................12

*Tiffany* v. *United States*, 931 F.2d 271 (4th Cir.
1991), cert. denied, 502 U.S. 1030 (1992) .......................9

*United States* v. *Kimbell Foods, Inc.*, 440 U.S. 715
(1979) ...........................................................12

*United States* v. *Munoz-Flores*, 495 U.S. 385 (1990)...........8

*Yearsley* v. *W.A. Ross Constr. Co.*, 309 U.S. 18
(1940) ........................................................5, 19

Constitution, statutes and regulations:

U.S. Const.:
Art. I, § 8, Cls. 11-16 ..........................................8
Art. II, § 2, Cl. 1..............................................8
Defense Base Act, 42 U.S.C. 1651 *et seq.* ......................18
42 U.S.C. 1651(a)(4) ...........................................18

V

Statutes and regulations—Continued:                    Page

Dignified Burial and Other Veterans' Benefits
    Improvement Act of 2012, Pub. L. No. 112-260,
    § 201, 126 Stat. 2422 (38 U.S.C. 527 note) .........................17

Federal Tort Claims Act, 28 U.S.C. 2671 *et seq.*:

28 U.S.C. 2671 .................................................................5, 13

28 U.S.C. 2680(a) ...........................................................6, 13

28 U.S.C. 2680(j) ............................................................5, 15

18 U.S.C. 2340A ...............................................................16

38 U.S.C. 1110 ..................................................................17

38 U.S.C. 1131 ..................................................................17

48 C.F.R. 52.228-7(c) ........................................................21

Army Reg. 700-137, para. 1-1 (1985).................................1

Army Reg. 715-9, para. 3-3(d) (1999) ...............................15

Miscellaneous:

*Contractor Personnel Authorized to Accompany the
    U.S. Armed Forces*, DoD Instruction 3020.4.1 (Oct.
    3, 2005) ........................................................................15

73 Fed. Reg. 16,764-16,765 (Mar. 31, 2008).........................15

H.R. Rep. No. 646, 112th Cong., 2d Sess. (2012)................17

*Policy & Procedures for Determining Workforce
    Mix*, DoD Instruction 1100.22 (Apr. 12, 2010) ...............15

U.S. Dep't of Veterans Affairs:

*Airborne Hazards and Open Pit Registry*,
    https://veteran.mobilehealth.va.gov/
    AHBurnPitRegistry/#page/home
    (last updated July 31, 2014) .......................................18

*Studies on Possible Health Effects of Burn Pits*,
    http://www.publichealth.va.gov/exposures/
    burnpits/health-effects-studies.asp (last visit-
    ed Dec. 15, 2014).........................................................17

# In the Supreme Court of the United States

---

No. 13-1241

KBR, INCORPORATED, ET AL., PETITIONERS

*v.*

ALAN METZGAR, ET AL.

---

*ON PETITION FOR A WRIT OF CERTIORARI*
*TO THE UNITED STATES COURT OF APPEALS*
*FOR THE FOURTH CIRCUIT*

---

**BRIEF FOR THE UNITED STATES AS AMICUS CURIAE**

---

This brief is submitted in response to the Court's order inviting the Solicitor General to express the views of the United States. In the view of the United States, the petition for a writ of certiorari should be denied.

**STATEMENT**

This case involves state-law claims against petitioners for injuries caused by their allegedly negligent performance under a contract with the U.S. military in Iraq and Afghanistan. The court of appeals reversed the dismissal of the claims and remanded for further proceedings.

1. Petitioners entered into a contract with the military called "LOGCAP III" to provide support services in Iraq, Afghanistan, and other foreign nations. Pet. App. 6; see Army Reg. 700–137, para. 1–1 (Dec. 16, 1985). Petitioners' contractual duties included waste

(1)

2

disposal and water treatment.  Pet. App. 6.  On some military bases in Iraq and Afghanistan, petitioners disposed of waste using open-air "burn pits."  *Ibid.*

Complaints were filed in state and federal courts by U.S. military personnel and others against petitioners, alleging that the burn pits had injured individuals near the pits by exposing them to harmful emissions and contaminating their water.  Pet. App. 54.  They pleaded various state-law claims, including negligence, breach of contract, battery, and intentional infliction of emotional distress.  *Ibid.*; see 8:09-md-2083 Docket entry No. 49, at 16-23 (D. Md. Mar. 9, 2010).  The federal cases were each transferred to the District of Maryland by the Judicial Panel on Multidistrict Litigation.  Pet. App. 55.  Petitioners moved to dismiss the complaints, arguing that the claims are nonjusticiable under the political-question doctrine, that they are preempted, and that petitioners are entitled to derivative sovereign immunity as federal contractors.  *Id.* at 7; 8:09-md-2083 Docket entry No. 217-2 (June 1, 2012).  Before the parties had conducted any jurisdictional discovery, the district court dismissed the claims on each of those alternative grounds.  Pet. App. 50-98.

2. The court of appeals reversed and remanded. Pet. App. 1-49.

a. With respect to the political-question doctrine, the court of appeals began by acknowledging that "[m]ost military decisions lie solely within the purview of the executive branch."  Pet. App. 10-11 (quoting *Taylor* v. *Kellogg Brown & Root Servs., Inc.*, 658 F.3d 402, 407 n.9 (4th Cir. 2011)).  For that reason, the court explained, "the political question doctrine renders a claim [against a government contractor] non-

3

justiciable if deciding the issue 'would require the judiciary to question actual, sensitive judgments made by the military,' which can occur even if the government contractor is 'nearly insulated from direct military control.'" *Id.* at 12 (quoting *Taylor*, 658 F.3d at 411). To evaluate whether an issue calls for such a forbidden inquiry, it continued, a court must "look beyond the complaint" and consider both how the plaintiff would prove its claims and how the defendant would defend. *Ibid.* (quoting *Taylor*, 658 F.3d at 409).

Applying that framework, the court of appeals first considered whether the military exercised control over petitioners' decisions to use burn pits. After reviewing the evidence presented thus far in the district court (exhibits and declarations submitted by the parties), the court concluded that "[a]lthough some evidence demonstrates that the military exercised control over [petitioners'] burn pit activities," respondents had "presented evidence * * * contradicting this picture." Pet. App. 17. "[W]e simply need more evidence," the court held, "to determine whether [petitioners] or the military chose how to carry out these tasks." *Id.* at 21-22.

The court of appeals went on to analyze "whether [respondents'] claims or [petitioners'] defenses require us to question the military's judgments." Pet. App. 22. Relying in part on the Third Circuit's decision in *Harris* v. *Kellogg Brown & Root Services, Inc.*, 724 F.3d 458 (2013), petition for cert. pending, No. 13-817 (filed Jan. 8, 2014), the court determined that petitioners' proximate-cause defense—that the military was responsible, at least in part, for respondents' alleged injuries—*might* require a factfinder to question military judgments. See Pet. App. 23-25. But

4

that would be true, the court said, "only if the governing law used a proportional-liability system that assigned liability based on fault," because in that circumstance the factfinder would be required to evaluate petitioners' relative fault and thus assign a degree of fault to the military. *Id.* at 24-25 (citing *Harris*, 724 F.3d at 475). In contrast, "under a pure joint-and-several liability system, the plaintiffs could obtain all of their relief from the military contractor, preventing the need to evaluate the military's decisions." *Id.* at 25 (citing *Harris*, 724 F.3d at 474). Given that "[m]any states have limited joint-and-several liability in tort actions," and "it is unclear which state's (or states') law will ultimately apply" here, *id.* at 25 n.4, the court held that "the political question doctrine does not render this case nonjusticiable at this time," *id.* at 25.[1]

b. The court of appeals also reversed and remanded on petitioners' claim of derivative sovereign immunity, which "protects agents of the sovereign from liability for carrying out the sovereign's will." Pet. App. 27 (citation omitted). The court explained that under *Yearsley* v. *W.A. Ross Construction Co.*, 309 U.S. 18 (1940), "a government contractor is not subject to suit if (1) the government authorized the contractor's actions and (2) the government 'validly conferred' that authorization, meaning that it acted within its constitutional power." Pet. App. 29 (quoting

---

[1] The court noted that petitioners had not pleaded a defense of contributory negligence, which could "possibly requir[e] the district court to question the military's decision making." Pet. App. 23 n.2. But even if that defense were pleaded on remand, the court concluded, it "would not affect [respondents'] breach of contract claims." *Id.* at 23-24 n.2.

5

*Yearsley*, 309 U.S. at 20-21). The court held that petitioners would be "entitled to derivative sovereign immunity only if [they] adhered to the terms of [their] contract with the government," and it determined that "[a]t this point in the litigation, the record does not contain enough evidence to determine whether [petitioners] acted in conformity" with the relevant contract and "whether the military permitted or required [petitioners] to deviate from the contract's terms under certain circumstances." *Id.* at 35-36.

c. Finally, the court of appeals reversed and remanded on the question whether respondents' claims are preempted by the federal interests inherent in the combatant-activities exception to the Federal Tort Claims Act (FTCA). See Pet. App. 37-49. That exception provides that the FTCA's waiver of the United States' sovereign immunity "shall not apply to * * * [a]ny claim arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war." 28 U.S.C. 2680(j).

The court recognized that the FTCA does not apply to government contractors, because they are excluded from the statute's definition of "federal agency." See Pet. App. 27 (citing 28 U.S.C. 2671). But it observed that, "[r]elying on the Supreme Court's decision in *Boyle* v. *United Technologies Corp.*, [487 U.S. 500 (1988),] multiple circuit courts have held that the federal interests inherent in the combatant activities exception conflict with, and consequently can preempt, tort suits against government contractors when those suits arise out of what those courts viewed as combatant activities." Pet. App. 37 (citing *Harris*, *supra*; *Saleh* v. *Titan Corp.*, 580 F.3d 1 (D.C. Cir. 2009), cert. denied, 131 S. Ct. 3055 (2011); and *Koohi*

6

v. *United States*, 976 F.2d 1328 (9th Cir. 1992), cert. denied, 508 U.S. 960 (1993)).  In *Boyle*, this Court held that the FTCA's discretionary-function exception, 28 U.S.C. 2680(a), reflected a federal policy that preempted certain state-law design-defect claims against federal contractors.  See 487 U.S. at 504-513.  Agreeing with the analysis of the Third Circuit in *Harris*, the court of appeals similarly determined that the combatant-activities exception represents a federal interest in "foreclos[ing] state regulation of the military's battlefield conduct and decisions."  Pet. App. 41-42 (quoting *Harris*, 724 F.3d at 480).

Again like the Third Circuit, the court of appeals adopted the standard first articulated by the D.C. Circuit in *Saleh* for evaluating whether a state-law claim against a contractor for wartime activities is preempted by that federal policy.  Pet. App. 44, 47.  Under that standard, "[d]uring wartime, where a private service contractor is integrated into combatant activities over which the military retains command authority, a tort claim arising out of the contractor's engagement in such activities shall be preempted."  *Id.* at 44 (quoting *Saleh*, 580 F.3d at 9).  In so holding, the court rejected the approach proposed by the United States in an amicus brief in *Al Shimari* v. *CACI Int'l, Inc.*, 679 F.3d 205 (4th Cir. 2012) (en banc), because that approach would preempt state tort law for acts "within the scope of the contractor's contractual relationship with the government" even with respect to "actions that the military did not authorize."  Pet. App. 45, 47.

The court of appeals concluded that it was unclear on the record before it whether the *Saleh* preemption test was satisfied.  Pet. App. 47-49.  The court did hold

7

that petitioners were "engaged in combatant activities" under that test, because "[p]erforming waste management and water treatment functions to aid military personnel in a combat area is undoubtedly necessary to and in direct connection with actual hostilities." *Id.* at 48 (internal quotation marks and citation omitted).  But because "[a]t this stage in the litigation,  *  *  *  the extent to which [petitioners were] integrated into the military chain of command is unclear," the court held that the district court had "erred in resolving this issue before discovery took place." *Id.* at 49.

### DISCUSSION

The decision below correctly recognized that no bar to justiciability is necessarily present at this stage of the litigation because a factfinder could rule in favor of respondents without questioning the wisdom of the U.S. military's battlefield judgments.  But the court of appeals applied an imprecise and unduly narrow understanding of preemption in this context.  Under its approach, contractors performing essential tasks in an active theater of war could be subject to the laws of fifty different States.

No substantial conflict of authority exists among the courts of appeals on either the justiciability question or the preemption question.  But because three courts of appeals have now adopted a preemption test that, in the view of the United States, does not sufficiently safeguard the significant national interests at stake, that issue warrants this Court's review in an appropriate case.  In the decision below, however, the court of appeals remanded to the district court for further determinations relevant to the political-question and preemption issues.  For that reason, we

8

conclude, on balance, that the Court should deny review here.

### A. Although This Case Is Justiciable At This Stage Of The Litigation, Respondents' Claims Are Preempted

1. The court of appeals correctly held that respondents' claims are not barred by the political-question doctrine at this stage of the litigation.

a. The political-question doctrine is "primarily a function of separation of powers," *Baker* v. *Carr*, 369 U.S. 186, 210 (1962), and "is designed to restrain the Judiciary from inappropriate interference in the business of the other branches of Government," *United States* v. *Munoz-Flores*, 495 U.S. 385, 394 (1990). It thus "excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch." *Japan Whaling Ass'n* v. *American Cetacean Soc'y*, 478 U.S. 221, 230 (1986). In *Baker*, this Court identified six characteristics "[p]rominent on the surface of any case held to involve a political question," including, as relevant here, "a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it." 369 U.S. at 217. To determine whether "one of these formulations" is applicable, the court must engage in a "discriminating inquiry into the precise facts and posture of the particular case." *Ibid.*

The Constitution confers on the Legislative and Executive Branches broad authority over the military. See U.S. Const. Art. I, § 8, Cls. 11-16; *id.* Art. II, § 2, Cl. 1. Although not "every case or controversy which

9

touches foreign relations lies beyond judicial cognizance," *Baker*, 369 U.S. at 211, military affairs feature prominently among the areas in which the political-question doctrine traditionally has been implicated. In *Gilligan* v. *Morgan*, 413 U.S. 1 (1973), for example, this Court held that the political-question doctrine barred a suit seeking injunctive relief based on allegations that the National Guard used excessive force in responding to Vietnam war protesters at Kent State University, because "[t]he complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments." *Id.* at 5, 10. Indeed, the Court found it "difficult to think of a clearer example of the type of governmental action that was intended by the Constitution to be left to the political branches," and "difficult to conceive of an area of governmental activity in which the courts have less competence." *Id.* at 10.

The basic principle, therefore, is that where resolving a legal claim would require an evaluation of quintessentially military judgments, such as operational decisionmaking in foreign theaters of war, the claim is nonjusticiable under the political-question doctrine. Courts of appeals have steadfastly applied that principle in cases seeking review of military judgments. See *Corrie* v. *Caterpillar, Inc.*, 503 F.3d 974, 982, 984 (9th Cir. 2007); *Aktepe* v. *United States*, 105 F.3d 1400, 1403-1404 (11th Cir. 1997), cert. denied, 522 U.S. 1045 (1998); *Tiffany* v. *United States*, 931 F.2d 271, 275, 277-278 (4th Cir. 1991), cert. denied, 502 U.S. 1030 (1992).

b. In this case, respondents do not assert that petitioners were negligent for engaging in conduct or-

10

dered or approved by the military.  Rather, they argue that within general parameters set by the military, petitioners acted negligently and that petitioners breached their contracts with the military.  See Pet. App. 6 ("According to [respondents], the[ir] injuries occurred because [petitioners] 'violated military directives in [their] performance of waste disposal and water treatment services' and breached  *  *  * [their] contract with the government.").  Evaluating those claims would not necessarily require a factfinder to scrutinize sensitive military judgments.  Accordingly, if the claims were not otherwise barred (but see pp. 11-18, *infra*), the district court could treat military standards and orders as a given, such that the trier of fact could not question the wisdom of military judgments.  Under such an approach, a jury could conclude that petitioners failed to act reasonably within the parameters established by the military, such as the terms of the pertinent contracts.  Or petitioners could prevail by demonstrating that they acted in a reasonably prudent manner given the military's parameters and the circumstances present in the theater of war at the time.  Either way, while we believe respondents' claims are preempted, adjudication of those claims would not violate the constitutionally grounded political-question doctrine because it would not require searching judicial inquiry into the soundness of judgments made by the military itself.

The analysis of the decision below is consistent with that general approach.  The court of appeals recognized that a claim that a contractor that adhered to military standards or orders should nevertheless be held liable under state law would pose a nonjusticiable political question.  See Pet. App. 12.  At the same

11

time, the court correctly held that petitioners' assertion of a particular defense—such as a lack of proximate causation—could render a claim nonjusticiable because, depending on the requirements for proving the defense or calculating damages, it might require an assessment of whether and to what extent the military should be regarded as having been at fault. *Id.* at 22-25.  The court concluded, however, that determining whether such an assessment will be necessary for respondents to succeed on their claims must await further developments in the litigation, including identification of the applicable state-law rules of liability.

c. Petitioners contend (Pet. 19-20) that adjudicating respondents' claims "would require courts to review * * * strategic military judgments." That is incorrect.  Rather, the lawfulness and wisdom of the military's judgments must be taken as given, and the actions of petitioners must be evaluated in light of those judgments.

The United States shares petitioners' concern with the application of state tort law to regulate important contractor functions in an active war zone.  That concern, however, is more appropriately addressed through preemption, not the political-question doctrine.  Still, the deference owed to the political Branches on military matters, as reflected in the political-question doctrine, does reinforce the conclusion that respondents' claims here are preempted in the absence of affirmative authorization by Congress for state tort law to enter that field.

2. The court of appeals erred in holding that respondents' state-law tort claims are not preempted.

12

a. This Court has long recognized that even absent a federal statute, a federal-law rule of decision must govern certain questions involving "uniquely federal interests," *Banco Nacional de Cuba* v. *Sabbatino*, 376 U.S. 398, 426 (1964), such as where "the authority and duties of the United States as sovereign are intimately involved" or where "the interstate or international nature of the controversy makes it inappropriate for state law to control," *Texas Indus., Inc.* v. *Radcliff Materials, Inc.*, 451 U.S. 630, 641 (1981).  For example, this Court has held that a federal rule of decision displaces state law with respect to "[t]he rights and duties of the United States on commercial paper which it issues," *Clearfield Trust Co.* v. *United States*, 318 U.S. 363, 366 (1943), "the priority of liens stemming from federal lending programs," *United States* v. *Kimbell Foods, Inc.*, 440 U.S. 715, 726 (1979), and "the scope of the act of state doctrine," *Sabbatino*, 376 U.S. at 427.  Those fields "are so committed by the Constitution and laws of the United States to federal control that state law is pre-empted and replaced, where necessary, by federal law of a content prescribed (absent explicit statutory directive) by the courts."  *Boyle* v. *United Techs. Corp.*, 487 U.S. 500, 504 (1988).

This Court applied those preemption principles in *Boyle* to hold that in certain circumstances state-law claims against federal procurement contractors are preempted.  487 U.S. at 512.  *Boyle* held generally that "displacement of state law" is appropriate if "a significant conflict exists between an identifiable federal policy or interest and the [operation] of state law," or if "the application of state law would frustrate specific objectives of federal legislation."  *Id.* at 507

13

(internal quotation marks and citations omitted; brackets in original). The Court further held that "[t]he conflict with federal policy need not be as sharp as that which must exist for ordinary preemption." *Ibid.*

Applying that framework, the Court concluded that application of state tort law to particular design features of military equipment would conflict with the federal policy embodied in the discretionary-function exception of the FTCA, which exempts from the FTCA's waiver of sovereign immunity "[a]ny claim * * * based upon the exercise or performance * * * [of] a discretionary function," 28 U.S.C. 2680(a). The "selection of the appropriate design for military equipment," the Court explained, "is assuredly a discretionary function within the meaning of this provision," because it involves "judgment as to the balancing of many technical, military, and even social considerations." *Boyle*, 487 U.S. at 511. Although the FTCA does not apply to actions of contractors, 28 U.S.C. 2671, the Court concluded that it would "make[] little sense to insulate the Government against financial liability for the judgment that a particular feature of military equipment is necessary when the Government produces the equipment itself, but not when it contracts for the production." *Boyle*, 487 U.S. at 512. Such liability "would produce the same effect sought to be avoided by the FTCA exemption" in that the "financial burden of judgments against the contractors would be passed through, substantially if not totally, to the United States itself." *Id.* at 511-512.

b. The decision below correctly recognized that the general preemption framework set forth in *Boyle* and

14

its antecedents governs these cases. See Pet. App. 37-49. It also correctly held, consistent with the holdings of three other circuits, that the FTCA's combatant-activities exception codifies a federal interest that would be frustrated if state-law tort liability applied without limitation to battlefield contractors under the military's auspices. See *Harris* v. *Kellogg Brown & Root Servs., Inc.*, 724 F.3d 458, 480 (3d Cir. 2013), petition for cert. pending, No. 13-817 (filed Jan. 8, 2014); *Saleh* v. *Titan Corp.*, 580 F.3d 1, 5-7 (D.C. Cir. 2009), cert. denied, 131 S. Ct. 3055 (2011); *Koohi* v. *United States*, 976 F.2d 1328, 1336-1337 (9th Cir. 1992), cert. denied, 508 U.S. 960 (1993). The military's effectiveness would be degraded if its contractors were subject to the tort law of multiple States for actions occurring in the course of performing their contractual duties arising out of combat operations.

But the decision below articulated a preemption standard that is both imprecise and too narrow. Adopting the test first articulated by the D.C. Circuit in *Saleh*, the court of appeals held that a battlefield contractor is shielded from state-law tort liability if the contractor was "integrated into combatant activities over which the military retains command authority." Pet. App. 46-47 (quoting *Saleh*, 580 F.3d at 9).

That standard appears to rest on a misunderstanding about the role of private contractors in active war zones and to reflect an unduly narrow conception of the federal interests embodied in the FTCA's combatant-activities exception. Under domestic and international law, civilian contractors engaged in authorized activity are not "combatants." Rather, they are civilians accompanying the force. They cannot lawfully engage in combat functions or combat opera-

15

tions, which are uniquely sovereign functions.  See *Contractor Personnel Authorized to Accompany the U.S. Armed Forces*, DoD Instruction 3020.4.1, para. 6.1.1 (Oct. 3, 2005); *id.* para. 6.1.5; *Policy & Procedures for Determining Workforce Mix*, DoD Instruction 1100.22, Encl. 4, para. 1.c(1)(b) (Apr. 12, 2010); 73 Fed. Reg. 16,764-16,765 (Mar. 31, 2008); Army Reg. 715-9, para. 3-3(d) (1999).

At the same time, however, the FTCA's combatant-activities exception does not apply only when the challenged act was itself a "combatant activity" or the alleged tortfeasor was itself engaged in a "combatant activity."  The statute instead bars claims "*arising out of* the combatant activities of the military * * * during time of war," 28 U.S.C. 2680(j) (emphasis added), and therefore applies not only to claims challenging the lawfulness of combatant activities, but also claims seeking redress for injuries caused by combat support activities.  Such claims are naturally understood to "arise out of" the military's combat operations.  The scope of preemption of claims against military contractors should be equivalent.

Accordingly, under a properly tailored preemption test, claims against a contractor are generally preempted if (i) a similar claim against the United States would be within the FTCA's combatant-activities exception because it arises out of the military's combatant activities, and (ii) the contractor was acting within the scope of its contractual relationship with the federal government at the time of the incident out of which the claim arose.[2]  That test is partic-

---

[2]  Even if all these factors exist, however, in narrow circumstances countervailing federal interests may make preemption inappropriate.  For example, preemption should not apply to shield a

16

ularly appropriate in situations where, as here, the
contractor was integrated with military personnel on
the same military base in the performance of the mili-
tary's combat-related activities.   This rule respects
the military's reliance on the expert judgment of con-
tractors, gives effect to the reality of informal interac-
tions between contractors and military personnel in
combat and support operations, and guards against
timidity of contractor personnel in performing critical
functions out of fear of tort liability.

Under that approach, federal preemption would
generally apply even if an employee of a contractor
allegedly violated the terms of the contract, as long as
the alleged conduct at issue was within the general
scope of the contractual relationship between the
contractor and the federal government.   Determina-
tion of the appropriate recourse for the contractor's
failure to adhere to contract terms and related direc-
tives under its exclusively federal relationship with
the United States would be the responsibility of the
United States, through contractual, criminal, or other
remedies—not private state-law suits by individual
service members or contractor employees.   Compare
*Buckman Co.* v. *Plaintiffs' Legal Comm.*, 531 U.S. 341
(2001); see also *Arizona* v. *United States*, 132 S. Ct.
2492, 2502 (2012).   But preemption would not apply to
conduct of a contractor employee that is unrelated to
the contractor's duties under the government con-
tract; a claim challenging such conduct would not
ordinarily be said to "arise out of" the military's com-
batant activities.   That standard assures that preemp-
tion is properly tailored to the federal interest inher-

---

contractor from liability for acts of torture as defined by federal
law.   See 18 U.S.C. 2340A.

17

ent in the combatant-activities exception: that actions arising out of the Nation's conduct of military operations should not be regulated by tort law.

Importantly, other legal avenues for obtaining compensation are available to service members injured by contractor negligence. The Department of Veterans Affairs provides compensation to veterans "[f]or disability resulting from personal injury suffered or disease contracted in line of duty." 38 U.S.C. 1110; see also 38 U.S.C. 1131. Indeed, the health effects of burn pits on service members in Iraq and Afghanistan have been the subject of studies by the Department of Defense, the Department of Veterans Affairs, and the Institute of Medicine. See U.S. Dep't of Veterans Affairs, *Studies on Possible Health Effects of Burn Pits*;[3] see also H.R. Rep. No. 646, 112th Cong., 2d Sess. 10 (2012) ("Due to complicating factors, including the presence of high background levels of ambient pollution from other sources, a lack of information regarding the quantity and composition of the waste burned in burn pits, and insufficient data on exposure to burn pit emissions, the [Institute of Medicine] was unable to develop a firm conclusion regarding the long-term health effects of burn pit exposure."). And in 2013, Congress enacted a statute directing the Department of Veterans Affairs to create and maintain an Open Air Burn Pit Registry to identify and monitor veterans who were exposed to burn-pit pollutants. See Dignified Burial and Other Veterans' Benefits Improvement Act of 2012, Pub. L. No. 112-

---

[3]  http://www.publichealth.va.gov/exposures/burnpits/health-effects
-studies.asp (last visited Dec. 15, 2014).

18

260, § 201, 126 Stat. 2422 (38 U.S.C. 527 note).  That registry became operational in June 2014.[4]

c. The claims against petitioners should be dismissed under the preemption standard proposed here. Respondents allege that petitioners acted negligently in performing contractual duties arising out of the military activities of the United States on foreign battlefields.  The disposal of waste and the treatment of water are essential support services when the United States military conducts combat operations.  Furthermore, when petitioners raised the United States' proposed preemption standard in the court of appeals, respondents did not identify any sound reason to believe that petitioners were not acting within the scope of their contractual relationship with the military.  See Resp. C.A. Reply Br. 15-16; but cf. Resp. C.A. Br. 53 (briefly asserting that "[t]he district court lacked a record upon which it could find that [petitioners were] acting within the scope of [their] contract").  As explained, respondents' claims that petitioners violated the terms of their contracts are insufficient to demonstrate that petitioners were acting outside the scope of the contractual relationship.  Accordingly, the court of appeals erred in holding that the claims could proceed.

3. The petition also presents (Pet. 35-39) the question whether petitioners are entitled to derivative sovereign immunity as government contractors.  The United States believes the principle of derivative

---

[4]  See  https://veteran.mobilehealth.va.gov/AHBurnPitRegistry/ #page/home (last updated July 31, 2014).  In addition, the Defense Base Act, 42 U.S.C. 1651 *et seq.*, establishes a federal workers' compensation system for, *inter alia*, employees injured or killed overseas while working under a government contract.  42 U.S.C. 1651(a)(4).

19

sovereign immunity informs the preemption analysis set forth above. Cf. Pet. 38 (noting that "the derivative sovereign immunity issue can be understood as part and parcel of the combatant-activities exception"). Indeed, *Boyle* relied on this Court's discussion of derivative sovereign immunity in *Yearsley* v. *W.A. Ross Construction Co.*, 309 U.S. 18 (1940), in establishing the basic preemption framework that governs this case. See *Boyle*, 487 U.S. at 505-506. Accordingly, that doctrine serves to reinforce the inappropriateness of applying state law in this context.

### B. Given The Interlocutory Posture Of This Case, Review Is Not Warranted At This Time

Despite the importance of the preemption issue and the incorrect standard adopted by the court of appeals, the United States believes, on balance, that review is not warranted at this time given the interlocutory posture of this case.

1. There is no substantial conflict among the circuits on either the justiciability question or the preemption question.

a. Each of the circuits to consider the applicability of the political-question doctrine in the context of battlefield contractors has held that suits that require a factfinder to assess judgments of the U.S. military are nonjusticiable. See Pet. App. 11-12; *Harris*, 724 F.3d at 466-467; see also *Carmichael* v. *Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1282-1283 (11th Cir. 2009), cert. denied, 561 U.S. 1025 (2010).

The decision below, like the Third Circuit's decision in *Harris*, concluded that whether a factfinder would be required to evaluate military judgments may turn on the substantive state-law rule to be applied in the proceeding—for example, the requirements for prov-

20

ing a particular defense or assessing damages. Pet. App. 25 & n.4; see *Harris*, 724 F.3d at 467; see also *Lane* v. *Halliburton*, 529 F.3d 548, 568 (5th Cir. 2008). Contrary to petitioners' contention (Pet. 26-27), the Eleventh Circuit's decision in *Carmichael* did not reject the proposition that the substantive legal requirements for proving a claim or defense can be relevant to whether a factfinder will be required to review military judgments. Rather, the Eleventh Circuit concluded only that the substantive principles of negligence relevant in that case did not vary among States. See 572 F.3d at 1288 n.13; cf. *McMahon* v. *Presidential Airways, Inc.*, 502 F.3d 1331, 1359, 1365 (11th Cir. 2007) (holding that for a military contractor to successfully invoke the first *Baker* factor, it "must demonstrate that the claims against it will require reexamination of a decision *by the military*" and remanding for further factual development).

b. Likewise, no square conflict exists among the courts of appeals over the proper preemption test applicable to state-law tort claims against military contractors. As discussed, the decision below and *Harris* each expressly adopted the standard articulated by the D.C. Circuit in *Saleh*, *supra*. See p. 6, *supra*.[5]

Petitioners contend (Pet. 32-34) that the decision below rejected *Saleh*'s approach. But the court of appeals rejected only the breadth of the D.C. Circuit's articulation of the federal interest at stake, while ultimately adopting the same preemption standard. See Pet. App. 41-42, 47; see also *Harris*, 724 F.3d at 480. And the Ninth Circuit's earlier decision in *Koohi*

---

[5] Petitioners do not contend that any circuit conflict exists with respect to the derivative-sovereign-immunity question.

21

comports with that standard.  See 976 F.2d at 1336-1337 (holding that claims against manufacturers of air-defense system for downing of civilian aircraft were preempted).

Although no circuit conflict exists on the preemption question, the United States agrees with petitioners that the issue warrants this Court's review.  The scope of state-law tort liability for battlefield contractors has significant importance for the Nation's military operations.  A legal regime in which contractors that the U.S. military employs during hostilities are subject to the laws of fifty different States for actions taken within the scope of their contractual relationship supporting the military's combat operations would be detrimental to military effectiveness.  And as this Court recognized in *Boyle*, 487 U.S. 511-512, expanded liability would ultimately be passed on to the United States, as contractors would demand greater compensation in light of their increased liability risks.  Indeed, many military contracts performed on the battlefield, including LOGCAP III, contain indemnification or cost-reimbursement clauses passing liability and allowable expenses of litigation directly on to the United States in certain circumstances.  See 48 C.F.R. 52.228-7(c).

Moreover, allowing state-law claims against battlefield contractors can impose enormous litigation burdens on the armed forces.  Plaintiffs who bring claims against military contractors (as well as contractors defending against such lawsuits) are likely to seek to interview, depose, or subpoena for trial testimony senior policymakers, military commanders, contracting officers, and others, and to demand discovery of military records.  It is therefore imperative that

22

courts apply a preemption standard that is consonant with the significant federal interests at stake, and that "district courts * * * take care to develop and resolve [preemption] defenses at an early stage while avoiding, to the extent possible, any interference with military prerogatives." *Martin* v. *Halliburton*, 618 F.3d 476, 488 (5th Cir. 2010).

2. Although this Court's review of the preemption issue is warranted, this case is not an appropriate vehicle to address that question at this time. The decision below is interlocutory, and it did not definitively resolve either the political-question issue or the preemption issue. Instead, it remanded the case for further proceedings that may result in dismissal or substantial narrowing of the case. See pp. 2-7, *supra*. Passages in the court of appeals' opinion, moreover, suggest that so long as petitioners acted consistent with their contractual obligations, or were subject to military authority (whether or not it was exercised), immunity or preemption would be appropriate. See Pet. App. 33 (derivative-immunity question is whether contractors "act[ed] within the scope of their validly conferred authority"); *id.* at 36 ("At this point in the litigation, the record does not contain enough evidence to determine whether [petitioners] acted in conformity with LOGCAP III, its appended task orders, and any laws and regulations that the contract incorporates" and "whether the military permitted or required [petitioners] to deviate from the contracts' terms in certain circumstances"); *id.* at 49 ("[T]he *Saleh* [preemption] test asks whether 'the military retain[ed] command authority' over [petitioners'] waste management and water treatment.") (second set of brackets in original).

23

This case thus may ultimately be deemed to raise a nonjusticiable political question even under the standard challenged by petitioners, or petitioners might prevail on some other basis, such as preemption. If that does not occur, this Court could consider granting review at a later stage in this case when those questions have been finally resolved by the court of appeals. At that point, the issues will be more sharply presented for this Court's review.[6]

3. If this Court were inclined to grant review, this case would be a more suitable vehicle than *Kellogg Brown & Root Services, Inc.* v. *Harris*, No. 13-817, because of the breadth of the claims and the inclusion of the derivative-sovereign-immunity question, which the *Harris* petition does not include. Although the United States believes that the doctrine of derivative sovereign immunity informs the basic preemption question, granting review in this case would ensure that this Court can consider the full range of argu-

---

[6] This Court has not decided whether the rule of *Steel Co.* v. *Citizens for a Better Environment*, 523 U.S. 83 (1998)—that a court may not dismiss a case on the merits before satisfying itself that it has jurisdiction, *id.* at 93-102—always requires a court to determine whether a case presents a political question before dismissing on a merits ground, such as preemption. There are substantial reasons to conclude that the Court should not so hold. The political-question doctrine can involve a factbound inquiry that precludes dismissal at an early stage in some cases. It would not be appropriate to compel a court to undertake such an inquiry— which could itself be burdensome for the court, the parties, and the military—if it could readily dismiss an action on certain closely related merits grounds, such as combatant-activities preemption. Cf. *Tenet* v. *Doe*, 544 U.S. 1, 7 n.4 (2005) (holding that certain nonjurisdictional threshold questions "may be resolved before addressing jurisdiction").

24

ments against permitting state law to govern contractors' actions on foreign battlefields.

**CONCLUSION**

The petition for a writ of certiorari should be denied.

Respectfully submitted.

DONALD B. VERRILLI, JR.
*Solicitor General*
EDWIN S. KNEEDLER
*Deputy Solicitor General*
JOHN F. BASH
*Assistant to the Solicitor General*
MICHAEL S. RAAB
H. THOMAS BYRON III
*Attorneys*

DECEMBER 2014